

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------X

RACHEL ECKERT,

            Plaintiff,

v.

CAROLETTE MEADOWS;

ERIE COUNTY;
MONROE COUNTY;

ERIE COUNTY CLERK'S OFFICE;
MONROE COUNTY CLERK'S OFFICE;

CITY OF BUFFALO;
BUFFALO POLICE DEPARTMENT;

JOHN DOE ERIE COUNTY CLERK 1;
JOHN/JANE DOE MONROE COUNTY CLERKS 1–2;

JOHN/JANE DOE JUDICIAL ADMINISTRATORS;

NEW YORK STATE UNIFIED COURT SYSTEM; and
INDIVIDUAL JUDICIAL DEFENDANTS,
SOLELY IN THEIR OFFICIAL CAPACITIES
FOR DECLARATORY AND PROSPECTIVE
INJUNCTIVE RELIEF FOR NON-JUDICIAL,
ADMINISTRATIVE, AND ULTRA VIRES ACTS,

            Defendants.

------------------------------------------------------X

**Case No. _____**

**26 CV 182**

**VERIFIED COMPLAINT**
Jury requested

## I. JURISDICTION & VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under

the Constitution and laws of the United States, including 42 U.S.C. §§ 1983 and 1985, the First

and Fourteenth Amendments, and the Fair Housing Act, 42 U.S.C. § 3617. Declaratory and

injunctive relief are authorized under 28 U.S.C. §§ 2201–2202. Venue is proper under 28 U.S.C. § 1391(b).

2. Plaintiff's Fair Housing Act claims are informed by the U.S. Department of Housing and Urban Development (aka "HUD") interpretations and guidance, including HUD-818, recognizing liability for governmental interference with the enforcement of housing rights.

## II. PARTIES

3. Plaintiff Rachel Eckert is an individual homeowner and small business owner who resides in the State of New York, City of Buffalo, County of Erie. Plaintiff proceeds subject to a contemporaneous request for reasonable ADA accommodations to ensure meaningful access to the Court.

4. Defendant Carolette Meadows is a private individual who resides in the State of New York, City of Buffalo, County of Erie.

5. County, City, Clerk, and Doe defendants are sued for policies, customs, practices, and acts that caused ongoing constitutional violations. Governmental employees also reside in the State of New York and County of Erie.

6. Defendant New York State Unified Court System is responsible for the **administration, policies, and practices** governing docketing, case assignment, motion processing, issuance of orders, and access to appellate review in New York State courts. Plaintiff names this Defendant **solely for declaratory and prospective injunctive relief** to remedy ongoing constitutional and statutory violations arising from non-judicial and administrative practices.

7. Individual judicial defendants are sued **solely for declaratory and prospective injunctive relief** and **solely for non-judicial, administrative, and ultra vires conduct**. Plaintiff does **not** seek damages for judicial rulings.

## III. CONSOLIDATED STATEMENT OF FACTS

### A. Pattern of Procedural Obstruction (2020–2026)

8. Since at least 2020, Plaintiff has experienced a multi-year pattern across multiple cases and counties of refusals to rule, refusals to issue written orders, refusal to allow Plaintiff to represent herself pro-se, misapplication of procedural statutes to block filings, failure to docket motions or assign judges, vacatur of defaults without motion or authority, failure to rule on emergency motions, failure to provide any requested relief subject to CPLR and case law, and obstruction of appellate review.

9. The denial of Plaintiff's access to adjudication was not limited to isolated judicial acts but arose from **systemic administrative practices** within the New York State Unified Court System, including failures to docket filings, assign judges, issue written orders identifying governing authority, and provide neutral access to emergency housing relief and appellate review.

10. These practices deprived Plaintiff of meaningful access to courts for a span of over five (5) years.

### B. Asymmetric Fee Enforcement

11. Defendant Meadows repeatedly invoked court processes without paying required filing fees or obtaining fee waivers. This includes contempt proceedings and at least one Monroe County action believed docketed as **E2025001694,** for which there is no record of fee payment or waiver at the time of filing.

12. In contrast, Plaintiff's filings were repeatedly rejected, delayed, or conditioned on fees or waivers, in multiple cases.

13. This disparate enforcement denied equal access to courts.

### C. Prior Procedural Denials and Subsequent Retaliatory Proceedings

14. Defendant Meadows recently obtained an Order to Show Cause against Plaintiff that was signed by Donna Siwek. This proceeding followed Plaintiff's extensive protected activity, including litigation, appeals, HUD complaints, and public petitioning regarding housing safety and retaliation.

15. Judge Siwek previously presided over one of Plaintiff's defamation actions involving Defendant Meadows. At the outset of that case, Judge Siwek **denied Plaintiff's poor-person application**, citing the existence of multiple related cases between the parties and asserting that Plaintiff was not familiar with the CPLR. Judge Siwek further required Plaintiff to obtain a **certificate of merit**, a requirement **not applicable to Plaintiff's claims**, and denied access to filing absent compliance.

16. As a result of these procedural rulings, Plaintiff was delayed in adjudicating her claims and forced to incur procedural burdens not required by statute or rule. These actions **restricted Plaintiff's access to the courts at the threshold**, before any merits determination.

17. The subsequent signing of an Order to Show Cause in favor of Defendant Meadows—after Plaintiff engaged in protected petitioning activity and while Plaintiff's own requests for relief were denied or obstructed—forms part of a broader pattern in which **procedural mechanisms were used to advance Defendant Meadows' requests while restricting Plaintiff's ability to proceed**.

### C. Miscaptioning, Transfer, and Clerk Obstruction

18. Plaintiff's private nuisance action was transferred with an inaccurate caption and mischaracterized as duplicative of defamation cases. After transfer, clerks rejected or failed to upload RJIs, returned blank rejection notices, and delayed judge assignment for months, foreclosing emergency adjudication while Defendant Meadows remained in default.

19. Plaintiff filed an Order to Show cause January 23, 2026 and the courts have sat on it, creating a non-neutral procedural delay (Meadows filed an OSC in what appears to be a contempt case on January 28, 2026 and the Judge signed the OSC January 29, 2026).

### D. Defaults Granted, Then Vacated Without Process

20. Plaintiff properly moved for default and injunctive relief; default was granted on January 15, 2026. Without any motion to vacate, statutory citation, findings, or leave to answer, the default was vacated on January 21, 2026, leaving Plaintiff without a clear procedural posture or appealable order.

21. Plaintiff properly requested the court to clarify its order and reasoning pursuant to Jud. Law and CPLR, and the court refused to clarify the order claiming it would be considered giving "legal advice". Instead, Plaintiff was forced to file a motion to renew/reargue.

22. This is improper practice, violates the rule of orders being clear, specific, and unambiguous pursuant to Jud. Law, and further delays the Plaintiff's right to adjudicate matters in a fair, equal, timely, and meaningful way.

### E. Retaliatory Use of CPS (Unfounded)

22. Defendant Meadows repeatedly weaponized Child Protective Services ("CPS") against Plaintiff as a form of discrimination and intimidation.

- **January 15, 2026:** Defendant Meadows initiated a CPS report on the same day Plaintiff initially prevailed in court. The report was based on allegations as to which Defendant Meadows **lacked firsthand knowledge** and is in the process of being closed as **unfounded.**

- **July 2025:** Defendant Meadows initiated a CPS report relying on **confidential and inaccurate medical information** concerning Plaintiff's minor child. Defendant

Meadows **had no lawful access** to this information and **no firsthand knowledge** of the alleged facts. That CPS report was investigated and determined to be **unfounded**.

23. Defendant Meadows is a licensed nurse with an active National Provider Identifier (NPI) and, upon belief, has professional access to protected health information systems. The use of detailed medical information in the CPS report supports a reasonable inference that such information was obtained or disclosed **without authorization** by Defendant Meadows.

24. Defendant Meadows has filed more than **ten** CPS reports against Plaintiff over approximately five years, all of which have been **unfounded**, demonstrating a pattern of retaliatory **misuse of CPS** rather than any legitimate child-safety concern.

25. In 2020, Defendant Meadows stated to the Plaintiff that "because she is white, she should not have black children". She proceeded to say she was going to get her (the Plaintiff) children taken away at which point CPS has been repeatedly weaponized in bad-faith.

26. In response to this conduct, Plaintiff filed two additional HUD complaints documenting CPS weaponization and retaliation. Defendant Meadows' repeated initiation of CPS reports without firsthand knowledge, lawful access to information, or substantiation constitutes harassment, retaliation, and interference with Plaintiff's protected rights.

### F. HUD Complaints and Notice

27. Following a firearm incident in October 2024, Plaintiff filed a HUD complaint alleging housing-related harassment and interference. HUD advised that Defendant Meadows would receive notice.

28. Retaliatory conduct followed after HUD notice.

### G. Discovery Obstruction via Mischaracterization

29. Plaintiff sought narrowly tailored discovery and evidentiary process necessary to investigate and prove defamation, retaliation, and housing-related interference, including subpoenas limited to Defendant Meadows' outbound communications to third parties and agencies.

30. Despite the narrow scope of these requests, Plaintiff's discovery efforts were **mischaracterized, blocked**, and **ultimately denied**, including by inaccurately describing Plaintiff's subpoena requests as seeking employment records when they sought only communications made by Defendant Meadows.

31. Plaintiff was further denied discovery through procedural obstruction, failure to issue written orders identifying governing authority, allowance of Defendant Meadows to submit procedurally improper filings while denying Plaintiff reciprocal discovery, and the use of procedural barriers that foreclosed Plaintiff's ability to obtain or preserve evidence.

32. These actions prevented Plaintiff from accessing evidence uniquely within Defendant Meadows' possession or control, impeded Plaintiff's ability to prove her claims, and deprived Plaintiff of a meaningful opportunity to litigate and seek redress.

## H. Ongoing Medical and Psychological Harm

33. Plaintiff has diagnosed **anxiety** and **major depressive disorder (MDD)**; providers determined MDD was caused by prolonged stress associated with Defendant Meadows' conduct and then exacerbated by a motor-vehicle accident. Plaintiff has been referred to an **electrophysiologist** for long-term post-accident symptoms; providers discussed alternatives to avoid invasive procedures. Continued stress materially worsens Plaintiff's conditions, posing a continued risk of irreversible harm.

## I. Joint Action / State Actor Allegations

34. Through repeated, coordinated use of state mechanisms (contempt, CPS, HIPPA violations, fee-free filings) timed to court events and facilitated by non-neutral administration, Defendant Meadows acted under color of state law through joint action and willful participation. These actions occurred with the knowing acquiescence and facilitation of state officials who repeatedly acted on Defendant Meadows' requests while denying Plaintiff reciprocal access.

35. Plaintiff further evidenced that Defendant Meadows obtained Plaintiff's non-public **personally identifiable information ("PII")** from an employee or agent of the City of Buffalo without lawful authorization.

36. Defendant Meadows' possession and use of Plaintiff's PII was not information available to the general public and was subsequently used to further harass, retaliate against, and target Plaintiff, including through litigation, agency complaints, and intimidation.

37. The unlawful disclosure and use of Plaintiff's PII demonstrates Defendant Meadows' **joint participation with state actors** and further evidences action under color of state law.

38. This joint action included Defendant Meadows' receipt and use of Plaintiff's non-public PII unlawfully disclosed by a City employee, further enabling retaliatory use of state mechanisms.

## IV. REQUEST FOR JUDICIAL NOTICE

39. In light of Plaintiff's disabilities and to avoid unnecessary duplication, Plaintiff respectfully requests that the Court take judicial notice in lieu of requiring repetitive attachment of voluminous public records that are readily accessible to the Court.

40. Pursuant to Federal Rule of Evidence 201, Plaintiff requests judicial notice of publicly available court records, dockets, orders, NYSCEF entries, appellate decisions, FOIL determinations, and filings in related federal actions referenced herein. These materials are

matters of public record, capable of accurate and ready determination, and are relied upon to establish chronology, procedural posture, and notice.

41. This request includes judicial notice of HUD complaint filings, correspondence, and administrative records referenced herein, offered to establish notice, chronology, and protected activity.

42. Plaintiff further requests judicial notice of CPS determinations that the reports referenced herein were unfounded, offered solely to establish outcome, chronology, and lack of substantiation.

## V. CLAIMS FOR RELIEF

43. Plaintiff does not seek review or reversal of any state-court judgment, but challenges ongoing administrative practices and retaliatory conduct that independently violate federal law.

### COUNT I — DENIAL OF ACCESS TO COURTS
(42 U.S.C. § 1983)-
Against Defendant governmental entities and officials, including County and City agencies, Clerk's Offices, and court administrative actors (collectively, the "Government Defendants")

44. Defendants engaged in a sustained pattern of conduct that denied Plaintiff meaningful access to the courts, including access to fair and timely adjudication, enforcement, discovery, and appellate review.

45. This conduct extended beyond isolated rulings and instead reflected **systemic, non-neutral obstruction** of Plaintiff's ability to litigate and enforce her rights.

46. Plaintiff repeatedly initiated actions and motions that were **authorized by statute, rule, and controlling case law,** including requests for emergency relief, defaults, discovery, subpoenas, and injunctive orders necessary to protect her housing, safety, family integrity, and livelihood.

47. Despite Plaintiff's compliance with applicable procedural requirements, her filings were

routinely **rejected, delayed, ignored, mischaracterized, and left undecided**, often without written orders or citation to governing authority.

48. Defendants and their agents denied Plaintiff access by, among other things:

- refusing or failing to rule on motions and emergency applications;

- failing to issue written orders identifying the procedural rule or statute relied upon, thereby **foreclosing appellate review**;

- miscaptioning and mischaracterizing Plaintiff's actions to justify consolidation or dismissal;

- selectively enforcing filing-fee and waiver requirements against Plaintiff while permitting Defendant Meadows to proceed without payment or waivers;

- vacating defaults and relief without motions, findings, statutory basis, or leave to answer;

- allowing Defendant Meadows to submit multiple procedurally improper filings while denying Plaintiff reciprocal procedural rights;

- obstructing discovery and evidence preservation by mischaracterizing subpoenas, refusing to rule on discovery requests, and blocking access to evidence uniquely within Defendant Meadows' control; and

- facilitating or tolerating retaliatory use of court processes, including contempt proceedings and CPS referrals, timed to Plaintiff's protected activity.

49. These actions **deprived Plaintiff of a meaningful opportunity to be heard**, prevented Plaintiff from developing and presenting evidence, and **blocked effective appeal**, resulting in actual and ongoing injury.

50. Plaintiff lost the ability to timely adjudicate housing and nuisance claims, obtain safety-related relief, pursue discovery necessary to prove retaliation and defamation, and secure appellate review of adverse actions in 2022.

51. The denial of access was **not neutral or incidental**. Plaintiff's legally supported requests were consistently denied or left unresolved, while Defendant Meadows' requests—including those unsupported by statute or rule—were routinely accepted, expedited, or granted. This asymmetric administration of court processes **favored the adverse party** and operated to deter Plaintiff from continuing to petition the courts.

52. These deprivations were caused, in part, by administrative practices of the New York State Unified Court System that obstructed Plaintiff's access to adjudication and appeal. Plaintiff's access to courts was further denied through threshold procedural barriers, including denial of poor-person status and imposition of inapplicable filing requirements, while adverse applications proceeded.

53. As a direct and proximate result of Defendants' conduct, Plaintiff suffered **actual injury**, including the loss of adjudication of housing-related claims, inability to enforce property and safety rights, obstruction of discovery, foreclosure of appellate remedies, and ongoing irreparable medical and psychological harm. These injuries cannot be remedied by monetary damages alone.

54. Defendants' conduct plausibly satisfies the elements of a denial-of-access claim by intentionally obstructing Plaintiff's ability to pursue and obtain judicial relief, resulting in actual injury.

## COUNT II — PROCEDURAL DUE PROCESS
(42 U.S.C. § 1983)-
Against Defendant Carolette Meadows **and** Defendant governmental entities and officials, including County and City agencies, Clerk's Offices, and court administrative actors (collectively, the "Government Defendants")

55. Defendants deprived Plaintiff of protected liberty and property interests by arbitrarily denying access to state-created procedures, emergency relief mechanisms, fee waivers, and appeal rights. Defendants denied Plaintiff procedures that state law affirmatively provides.

56. Defendants deprived Plaintiff of **procedural due process** by repeatedly denying her the **minimum procedural protections guaranteed by law,** including notice, a meaningful opportunity to be heard, neutral application of governing rules, and reasoned decision-making capable of appellate review.

57. Plaintiff possessed protected **property and liberty interests**, including:

- the right to seek enforcement of housing, nuisance, and property-rights claims;

- the right to emergency relief to protect the safety and habitability of her home;

- the right to pursue discovery and subpoenas necessary to prove defamation, retaliation, and housing interference;

- the right to appeal adverse rulings; and

- the right to be free from retaliatory misuse of governmental processes.

58. Despite these protected interests, Defendants repeatedly denied Plaintiff due process through **arbitrary and non-neutral procedures**, including:

- denying or failing to rule on motions and emergency applications without notice or explanation;

- refusing to issue written orders or issuing orders that failed to identify the governing statute, rule, or legal basis, thereby **preventing compliance and foreclosing appeal;**

- vacating defaults and relief **without any motion, statutory authority, findings, or opportunity to be heard;**

- miscaptioning and mischaracterizing Plaintiff's cases to justify consolidations and dismissals;

- selectively enforcing procedural requirements, including filing fees, waivers, discovery standards, and motion practice, against Plaintiff but not against Defendant Meadows;

- allowing Defendant Meadows to file multiple procedurally improper answers and motions while denying Plaintiff reciprocal procedural rights;

- obstructing discovery and evidence preservation by mischaracterizing subpoenas, refusing to rule on discovery requests, and blocking access to evidence uniquely within Defendant Meadows' possession or control; and

- facilitating or tolerating retaliatory use of court processes, including contempt proceedings and CPS referrals, timed to Plaintiff's protected activity.

59. These actions were not isolated errors or discretionary rulings, but part of a **persistent pattern** that denied Plaintiff **notice, neutrality, and a meaningful opportunity to be heard**. Plaintiff was left without clear procedural guidance, without enforceable rulings, and without access to appellate review.

60. The non-neutral administration of court procedures by the New York State Unified Court System deprived Plaintiff of notice, reasoned decision-making, and a meaningful opportunity to be heard.

61. The cumulative effect of Defendants' conduct **shocked the conscience** and rendered the available procedures **fundamentally unfair**, depriving Plaintiff of due process under the Fourteenth Amendment.

62. As a direct and proximate result of these due process violations, Plaintiff suffered actual and ongoing injury, including loss of adjudication of housing-related claims, inability to enforce

property and safety rights, obstruction of discovery, foreclosure of appellate remedies, and continuing irreparable medical and psychological harm.

63. Defendants' non-neutral application of filing-fee requirements deprived Plaintiff of due process by allowing an adverse party to proceed without compliance while denying Plaintiff equal procedural treatment.

64. The unauthorized disclosure and use of Plaintiff's PII by a state actor also deprived Plaintiff of due process and further denied equal and neutral access to judicial and administrative procedures.

65. The denial of poor-person status based on inapplicable standards and the imposition of non-statutory prerequisites deprived Plaintiff of a meaningful opportunity to be heard at the outset of litigation.

66. Defendants' actions plausibly satisfy the elements of a procedural due process violation by depriving Plaintiff of state-created procedural protections without notice, a hearing, or a meaningful opportunity to be heard.

## COUNT III — FIRST AMENDMENT RETALIATION
### (42 U.S.C. § 1983)-
Against Defendant Carolette Meadows and Defendant governmental entities and officials, including County and City agencies, Clerk's Offices, and court administrative actors (collectively, the "Government Defendants")

67. Defendants retaliated against Plaintiff for engaging in protected speech and petitioning activity by imposing punitive enforcement, obstructing compliance, and escalating adverse actions designed to chill further exercise of First Amendment rights.

68. Plaintiff engaged in extensive **protected activity** under the First Amendment, including but not limited to petitioning courts for emergency relief, filing nuisance and property-rights actions, pursuing appeals, filing FOIL requests and HUD complaints, filing discrimination complaints

with NYS Division of Human Rights, seeking discovery and subpoenas, and speaking publicly about safety conditions, governmental inaction affecting her home, and corruption.

69. In response to this protected activity, Defendants subjected Plaintiff to a **pattern of retaliatory and punitive actions** that would deter a person of ordinary firmness from continuing to petition the government.

70. These actions were not limited to isolated incidents but constituted a coordinated course of conduct designed to pressure Plaintiff into abandoning her claims.

71. Defendant Meadows retaliated against Plaintiff by physically and procedurally obstructing necessary repairs to Plaintiff's home, including interfering with contractors and brandishing loaded firearms.

72. At the same time, Plaintiff was actively seeking court orders to compel access and compliance, relief that was repeatedly denied, delayed, or left undecided.

73. Despite Plaintiff's inability to perform repairs due to Defendant Meadows' obstruction and the courts' refusal to enforce Plaintiff's housing and property rights, the **City of Buffalo pursued housing-code violations against Plaintiff in Housing Court**, effectively penalizing Plaintiff for conditions she was **actively attempting—but being prevented—from correcting**.

74. This enforcement occurred while Plaintiff's petitions for judicial relief were stalled or obstructed, leaving Plaintiff trapped between **retaliatory obstruction** by Defendant Meadows and **punitive enforcement** by the City, with no meaningful avenue to comply. The predictable and intended effect was to **punish Plaintiff for petitioning activity**, chill further legal action, and coerce Plaintiff into abandoning her efforts to enforce her rights.

75. Additional retaliatory actions included:

- unfounded CPS reports timed to court proceedings and protected complaints;

- retaliatory contempt proceedings aimed at silencing Plaintiff's speech;

- selective and non-neutral application of procedural rules to deny Plaintiff relief while granting Defendant Meadows' requests;

- obstruction of discovery and evidence necessary to prove retaliation and housing interference;

- unlawful disclosure and use of Plaintiff's personal information to facilitate further harassment; and

- Unlawful access to the Plaintiff's minor child's medical records.

76. The **temporal proximity** between Plaintiff's protected activity and the adverse actions taken by Defendants, combined with the **pattern of escalation following each petition**, establishes a causal connection sufficient to plead retaliation. Defendants' conduct imposed concrete harms, including legal exposure, financial penalties, loss of housing safety, family distress, and severe medical and psychological injury.

77. The advancement of adverse proceedings following Plaintiff's protected petitioning activity, coupled with prior procedural barriers imposed on Plaintiff's filings, supports a reasonable inference of retaliatory use of court processes.

78. Defendants' actions would deter a person of ordinary firmness from continuing to seek judicial or administrative relief and therefore constitute retaliation in violation of the First Amendment.

79. Defendants' conduct plausibly satisfies the elements of First Amendment retaliation, as Plaintiff engaged in protected activity, Defendants took adverse action that would deter a person of ordinary firmness, and the adverse action was causally connected to Plaintiff's protected conduct.

**COUNT IV — FAIR HOUSING ACT INTERFERENCE & RETALIATION**
(42 U.S.C. § 3617; HUD Interpretation incl. HUD-818)-
Against Defendant Carolette Meadows **and** Defendant governmental entities and officials,
including County and City agencies, Clerk's Offices, and court administrative actors
(collectively, the "Government Defendants")

80. The Fair Housing Act (aka "FHA") makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of rights protected by the Act, or because that person has exercised such rights. 42 U.S.C. § 3617.

81. Plaintiff's FHA-protected rights include the use, enjoyment, safety, repair, and habitability of her dwelling, and the right to seek enforcement and adjudication of housing and property-related claims, including nuisance, safety, and interference actions.

82. Plaintiff engaged in protected activity by:

- seeking emergency relief to protect the safety and habitability of her home;

- pursuing nuisance and property-rights actions;

- filing HUD complaints concerning housing interference and a firearm incident;

- and petitioning courts and agencies to enforce housing-related rights.

83. Defendant Meadows interfered with these rights through harassment, intimidation, retaliation, and coercive acts, including but not limited to:

- physical interference with multiple contractors needed for repairs;

- multiple retaliatory and unfounded CPS reports timed to court proceedings;

- misuse of contempt proceedings to punish protected speech;

- and actions intended to deter Plaintiff from pursuing housing enforcement.

84. Government Defendants also interfered with Plaintiff's FHA-protected rights by obstructing, delaying, and effectively denying adjudication of Plaintiff's housing and property-rights claims, including:

- refusing or failing to rule on emergency applications for housing-related relief;

- failing to docket filings, assign judges, or issue written orders necessary for appeal;

- miscaptioning and mischaracterizing housing actions as unrelated matters;

- selectively enforcing filing requirements and fee rules to block Plaintiff's access while allowing adverse filings to proceed;

- and vacating relief without motion, findings, or process, thereby nullifying enforcement of housing rights.

85. These acts interfered with Plaintiff's ability to obtain timely and meaningful adjudication of housing matters, including claims necessary to address structural safety, habitability, and interference with repairs, and thereby denied Plaintiff the full enjoyment and protection of her dwelling.

86. Under HUD's interpretation of § 3617, including HUD-818, **state and local agencies and officials** may be **held liable** where their actions **interfere with, discourage, delay, or retaliate against the exercise of fair housing rights,** including by failing to provide neutral access to enforcement mechanisms. Interference includes obstruction of enforcement mechanisms, not merely physical housing access.

87. The interference by Government Defendants was not neutral or ministerial, but part of a pattern that discouraged, chilled, and obstructed Plaintiff's protected activity and favored the adverse party, resulting in ongoing harm to Plaintiff's housing rights.

88. Government Defendants, including the New York State Unified Court System, interfered with Plaintiff's enforcement of housing and property rights by obstructing neutral adjudication of nuisance, safety, and habitability claims.

89. Defendants' conduct was intentional, retaliatory, and had the natural and foreseeable effect of interfering with Plaintiff's FHA-protected rights, in violation of 42 U.S.C. § 3617.

90. Defendants conduct plausibly satisfies the elements of interference and retaliation under 42 U.S.C. § 3617 by engaging in coercive and retaliatory acts following Plaintiff's protected housing-related activity, including unfounded CPS reports, obstruction to neutral adjudication, and obstruction of enforcement.

## COUNT V — CONSPIRACY TO OBSTRUCT JUSTICE
### (42 U.S.C. § 1985(2))-
Against Defendant Carolette Meadows **and** Defendant governmental entities and officials, including County and City agencies, Clerk's Offices, and court administrative actors (collectively, the "Government Defendants")

91. Defendants knowingly entered into a conspiracy to **impede, hinder, obstruct, and defeat the due course of justice** in city and state-court proceedings and to **retaliate against Plaintiff** for exercising the right to free speech and expression. Defendants conspired to intimidate Plaintiff as a litigant and party in judicial proceedings.

92. In furtherance of the conspiracy, Defendants committed overt acts including but not limited to selective enforcement of procedural rules, obstruction of discovery, acceptance of adverse filings without required fees, vacatur of relief without process, facilitation of retaliatory CPS and contempt proceedings, and punitive housing enforcement despite obstructed compliance.

93. Defendants acted with intent to injure Plaintiff in her person, property, and constitutional rights, resulting in actual and ongoing injury, including loss of adjudication, exposure to enforcement penalties, chilling of protected activity, and irreparable medical and psychological harm.

94. These actions further demonstrate how procedural mechanisms were predictably invoked to advance Defendant Meadows' requests while impeding Plaintiff's ability to litigate, supporting an inference of coordinated obstruction of justice.

95. Defendants' coordinated conduct plausibly satisfies the elements of conspiracy under 42 U.S.C. § 1985(2) by impeding the due course of state-court proceedings with the intent and effect of injuring Plaintiff's rights.

## VI. PRAYER FOR RELIEF

This action falls within the bad-faith and extraordinary-circumstances exceptions to Younger abstention, as Plaintiff lacks an adequate state forum and faces irreparable harm. Plaintiff does not challenge judicial decision-making on the merits. **WHEREFORE,** Plaintiff respectfully seeks the following relief:

A. **Declaratory relief** declaring that Defendants' actions and practices, as alleged herein, violate Plaintiff's rights under the United States Constitution and the Fair Housing Act;

B. **Prospective injunctive relief** prohibiting retaliation against Plaintiff for engaging in protected activity, including the misuse of court processes, agency complaints, contempt proceedings, or other state mechanisms;

C. **Prospective injunctive relief** requiring Defendants and their agents, in their administrative and non-judicial capacities, to **lawfully process Plaintiff's filings**, including timely docketing, assignment, and consideration of motions and emergency applications;

D. **Prospective injunctive relief** requiring that rulings on Plaintiff's motions and applications be issued in **clear written orders that identify the governing procedural rule, statute, or legal**

**authority relied upon**, including applicable provisions of the CPLR or other controlling law, so that Plaintiff may understand the basis of the decision and preserve appellate rights;

E. **Prospective injunctive relief** prohibiting the selective or non-neutral application of procedural rules, including filing-fee requirements, defaults, discovery standards, and emergency relief mechanisms;

F. **Declaratory and injunctive relief** to prevent ongoing and irreparable harm to Plaintiff's housing rights, family integrity, medical and psychological health, harms that are **not fully compensable by monetary damages**;

G. Ordering the New York State Unified Court System to implement and enforce **neutral administrative practices** ensuring lawful docketing, timely adjudication, issuance of written orders citing governing authority, and meaningful access to appellate review in housing-related matters;

H. **Costs and fees** as permitted by law; and

I. **Such other and further relief** as the Court deems just and proper.

Sincerely,

Rachel Eckert, pro-se

I declare under penalty of perjury:

1. I am the Plaintiff in the above-referenced matter.

2. Retaliation and obstruction have escalated after constitutionally protected activity and HUD complaints.

3. CPS reports filed after court events were **unfounded**, including one using confidential, inaccurate medical information.

4.  I am diagnosed with anxiety and MDD and undergoing treatment still for a long-term concussion; providers determined MDD was caused by prolonged stress tied to Defendant Meadows' conduct and exacerbated by an accident.

5.  I am under care, referred to an electrophysiologist; sustained stress materially worsens my condition and risks irreversible harm.

6.  Money cannot remedy these harms; immediate relief is necessary.

Executed January 30, 2026

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

*Rachel Eckert*

*January 30, 2026*

*Erie County*